IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   ETHICON, INC.,
         PELVIC REPAIR SYSTEM
         PRODUCTS LIABILITY LITIGATION                MDL No. 2327

---

THIS DOCUMENT RELATES TO:

*White et al. v. Ethicon Inc. et al.*              Civil Action No. 2:12-cv-00958

MEMORANDUM OPINION AND ORDER
(Defendants' Motion for Summary Judgment Based on Statute of Limitations)

Pending before the court is the Motion for Summary Judgment [ECF No. 49] filed by Ethicon Inc. and Johnson & Johnson (collectively "Ethicon") and focused on whether the plaintiffs' case is barred by the applicable statute of limitations. The plaintiffs filed their Response [ECF No. 59], and the defendants filed their Reply [ECF No. 63]. Thus, this matter is ripe for my review, and the Motion is **DENIED**.

I.

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs there are more than 75,000 cases currently pending, approximately 30,000 of which are in the Ethicon MDL, MDL 2327. In an effort to effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (i.e., after the court has ruled on all *Daubert* motions, summary judgment motions, and motions in limine, among other things), it can then

be transferred or remanded to the appropriate district for trial. To this end, I ordered the parties to submit a joint list of 200 of the oldest cases in the MDL, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. The Whites' case was selected as part of Ethicon's Wave 1 case by the parties. Pretrial Order No. 196.

On July 9, 2008, Ms. White was implanted with Ethicon's Gynecare Gynemesh product ("Gynemesh") by Dr. Randall E. Feezell. Ms. White claims that she has experienced multiple complications and injuries as a result of the procedure. She now brings the following claims against Ethicon as to the Gynemesh: negligence; strict liability for manufacturing defect, failure to warn, defective product, and defective design; common law and constructive fraud; fraudulent concealment; negligent misrepresentation; negligent infliction of emotional distress; breach of express and implied warranties; gross negligence; unjust enrichment; punitive damages; and discovery rule and tolling. Additionally, Mr. White brings a claim for loss of consortium.

Ethicon argues that all of the plaintiffs' claims are barred by Arkansas's statute of limitations,[1] and consequently, the court should grant summary judgment in favor of Ethicon.

---

[1] The defendants argue that all of the plaintiffs' claims—whether based on theories of negligence, strict liability, breach of warranty, or loss of consortium—are governed by section 16-116-102(5) of the Arkansas Code. The plaintiffs do not contest this.

## II.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08- md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). Because the plaintiffs first filed in the United States District Court for the Western District of Arkansas, the choice-of-law principles of Arkansas guide this court's choice-of-law analysis.

These principles compel the application of Arkansas law to the plaintiffs' claims. In Arkansas, the choice-of-law analysis turns on the doctrine of *lex loci delicti* and five additional factors: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law." *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 846 (Ark. 2006).

To start—and most importantly—the surgery that stands at the center of this case took place in Arkansas. *See id.* at 846 ("Under the doctrine of *lex loci delicti*, the law of the place where the wrong took place is the proper choice of law."). Arkansas has a more significant relationship to Ms. White and an interest in protecting its citizens from defective products. And Arkansas's statute of limitations could be outcome determinative. So three of the five factors weigh in favor of applying Arkansas law. The remaining factors—predictability and application of the better rule of law—do not favor any forum over another. Accordingly, I **FIND** Arkansas's substantive law—including its statutes of limitations—applies in this case.

## III.

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when

the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude summary judgment. *See, e.g.*, *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## IV.

Under Arkansas law, a products liability action must be brought within three years after the complained-of injury occurred. Ark. Code Ann. § 16-116-103. Depending on the circumstances, when this period begins to run may be a legal question for the court or a factual question for the jury. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 935 S.W.2d 258, 262 (Ark. 1996). Doubts regarding the application of the statute of limitations should be resolved in favor of allowing the claim to proceed. *State v. Diamond Lakes Oil Co.*, 66 S.W.3d 613, 616 (Ark. 2002).

The Supreme Court of Arkansas has adopted the discovery rule for medical product liability claims. So the statute of limitations for these claims "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *Martin v. Arthur*, 3 S.W.3d 684, 690 (Ark. 1999).

Ethicon argues that Ms. White was aware of the causal connection between her alleged injuries and the Gynemesh at some point on or before March 6, 2009. Before March 6, 2009, Ethicon argues, Ms. White had three partial revisions of the mesh. And prior to a revision on August 23, 2008, Ethicon continues, Ms. White was admitted to the hospital for the night after visiting the emergency room complaining of pelvic pain. Then—on March 6, 2009—Ms. White met with Dr. Richard McWhorter, who advised her to have the Gynecare mesh partially removed. That same day, Ms. White signed a consent form for the suggested surgery, which Dr. McWhorter subsequently performed on March 18, 2009. According to Ethicon, Ms. White had to understand the causal connection between her alleged injuries and her Gynecare mesh no later than when she signed the consent form on March 6, 2009.

The plaintiffs respond that March 18, 2009—the day of her removal surgery— is the earliest Ms. White could have discovered the causal connection between her injuries and Ethicon's mesh product. After her implantation surgery and before her removal surgery, Ms. White saw several doctors, all of whom told Ms. White that vaginal pain and small, exposed areas of mesh were normal and easy to correct. Discussing the August 2008 hospital visit, Ms. White explained that she believed she was correcting a "known risk" of mesh implants and that she was also plagued with other concurrent bladder issues at the time. Additionally, during multiple visits to doctors in late 2008, neither her urologist nor gynecologist found evidence of mesh exposure. During her earliest visits with Dr. McWhorter, Ms. White was told her

issues were related to an "interstitial cystitis flare," rather than any kind of defect with her mesh.

Accordingly, the plaintiffs argue, they could not have been expected to know that Ms. White's alleged injuries were related to the mesh until after her mesh removal procedure. Following the removal surgery, Dr. McWhorter told Ms. White that the mesh was like a "porcupine ball" inside her vagina and that the mesh "appeared to be pulled together in one thick band coming across posteriorly." Resp. 5. So Ms. White argues that she could not have known her injury was caused by the mesh until March 18, 2009, after her surgery and after Dr. McWhorter reported his findings.

The facts—when viewed in the light most favorable to the plaintiffs—are not as simple as Ethicon suggests. Ethicon contends that Ms. White admitted she was aware that her injuries were related to her Gynecare mesh long before her removal surgery. But Ms. White testified only that her concerns about numerous pelvic and abdominal issues began to arise in July 2008, and she diligently sought treatment related to these concerns. Further, Ms. White claims that her doctors informed her that certain discomfort was "an expected complication as a result of the known risks" linked to the Gynemesh and that she would need to have her mesh trimmed. Ms. White's physicians even believed that the pain and discomfort she was experiencing may have been incidental to mesh erosion, rather than a result of defective mesh. *See, e.g.*, Feezell Dep. 38:1–23 [ECF No. 58-3]; McWhorter Dep. 69:5–17 [ECF No. 58-4]. Considering that, even after the removal surgery on March 18, 2009, Ms. White's

physician did not believe the mesh was the source of Ms. White's injuries, I refuse to conclude that Ms. White knew or should have known that her injuries were caused, or even related to, her Gynemesh mesh before the statute of limitations had run.

Therefore, a genuine dispute of material fact exists as to whether Ms. White knew or should have known her injuries were caused by her mesh before March 8, 2009. The jury should resolve this factual question. *See Diamond Lakes Oil Co.*, 66 S.W.3d at 616 ("[I]f there is any reasonable doubt as to the application of the statute of limitations, this court will resolve the question in favor of the complaint standing and against the challenge."). Accordingly, I **DENY** Ethicon's Motion for Summary Judgment [ECF No. 49].

## V.

Ethicon's Motion for Summary Judgment [ECF No. 49] is **DENIED** because there are factual matters surrounding whether the statute of limitations applies to this case and bars Ms. White's claims.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      May 25, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE